UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RONALD HOLTZ,

        Plaintiff,

    v.

JOELLA PHILLIPS, Physician Assistant; PETER BECK, MSW, M-Div, Mental Health Program Manager; WASHINGTON DEPARTMENT OF CORRECTIONS, SECRETARY BERNARD WARNER, ACTING ASSISTANT SECRETARY KEVIN BOVENKAMP, DEPUTY DIRECTOR SCOTT R. FRAKES, (DOC) MANAGER/MEDICAL DIRECTOR ROY GONZALEZ, (DOC) HEALTH CARE MANAGER MARY JOE CURREY, COYOTE RIDGE CORRECTIONS CENTER, SUPERINTENDENT JEFFREY UTTEHT, HEALTH CARE MANAGER DARREN CHLIPALA, DR. B. RODRIGUEZ, PSYCHIATRIST DR. MICHAEL REZNICEK, WASHINGTON STATE PENITENTIARY, SUPERINTENDENT, STEVEN SINCLAR, MEDICAL DIRECTOR JAMES EDWARDS, DR. F. SMITH, MENTAL HEALTH PHYSICIAN MELANIE HOWARD, AMERICAN DISABILITIES SPECIALIST HOLLY DE/CAMBRE (DOC), in official and individual capacities, CHIEF MEDICAL OFFICER G. STEVEN HAMMOND, PH.D.,

        Defendants.

No. CV-14-5018-EFS

**ORDER DENYING MOTIONS AND DIRECTING DOC TO FILE ADDITIONAL MEDICAL DOCUMENTATION WITH REGARD TO PLAINTIFF AND ORDERING DELIVERY OF PLAINTIFF'S LEGAL MATERIALS WITHIN THIRTY DAYS OF TRANSFER**

    On May 20, 2014, a telephonic scheduling conference was held, during which four motions held in abeyance were discussed and a trial date was set. Plaintiff Ronald Holtz participated pro se, while Defendant Washington State Department of Corrections (DOC) was

ORDER - 1

1  represented by Joseph Edwards from the Attorney General of
2  Washington's Office.
3       Previously, during a motion hearing on May 6, 2014, the Court
4  heard argument on a variety of motions.  On May 8, 2014, the Court
5  issued an Order holding four motions in abeyance pending the Court's
6  review of documentation submitted by DOC regarding the transfer of
7  Plaintiff to the Washington Corrections Center (WCC) in Shelton,
8  Washington. The Court wanted to ensure that Plaintiff's transfer was
9  not an act of bad faith by DOC before ruling on certain matters.  The
10 Court finds that DOC did not act in bad faith in transferring
11 Plaintiff to WCC and, for the reasons that follow below, the Court
12 denies the four motions held in abeyance.  The Court also directs DOC
13 to submit new documentation with regard to the Plaintiff's need for a
14 medical wedge.  The Court also orders DOC to provide Plaintiff with
15 his required legal materials within thirty days of his transfer to
16 WCC.

**I.   PLAINTIFF'S REQUEST TO COMPEL TRANSFER TO MONROE CORRECTIONAL COMPLEX**

     During the hearing, the parties first discussed Plaintiff's request that the Court compel his transfer to the Monroe Correctional Complex (MCC). This request arose from Plaintiff's Motion for Temporary Restraining Order, ECF No. 49.  The Court sought clarification regarding what Plaintiff was requesting in this motion during the May 6, 2014 hearing, and interpreted the motion for a temporary restraining order to be a motion to compel Plaintiff's transfer to MCC.  Because the documentation submitted by DOC contains

ORDER **-** 2

1 no indicia of bad faith or malicious intent, the Court has no basis to
2 channel Plaintiff to MCC rather than WCC.

3     It is well settled that "an inmate has no justifiable
4 expectation that he will be incarcerated in any particular prison
5 within a State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). And
6 the State of Washington has granted the Secretary of Corrections
7 complete discretionary authority to transfer prisoners among
8 facilities "[w]henever in its judgment the best interests of the state
9 or the welfare of any prisoner confined in any penal institution will
10 be better served by his or her transfer." RCW § 72.68.010. Without a
11 solid foundation on which to proceed, this Court will not interfere
12 with DOC's lawful use of its discretionary powers.

13     Rather than assert any factual basis for his request, Plaintiff
14 points to the unknown. He states "no one knows what awaits me, will I
15 suffer worse circumstances, be subject to more retaliation." ECF No.
16 49-1 at 1. In attempting to compel his transfer to MCC, Plaintiff
17 assumes the existing record before the Court establishes the need for
18 the Court to intervene in his transfer. But the Plaintiff's motion
19 does not establish that he faces any imminent harm because of this
20 transfer. Nor does the Plaintiff provide any factual record that
21 proves there was foul play or punitive intent with regard to the
22 transfer decision. He offers no indication that DOC has overstepped
23 its discretionary authority.

24     The Court recognizes that Plaintiff has minimal access to
25 internal DOC documentation regarding his transfer, so he has limited
26 means to establish malicious intent or bad faith behind the transfer.

1 However, the Court accounted for this inequity by ordering DOC to
2 submit a documentary record regarding Plaintiff's impending transfer
3 to WCC. The Court reviewed this record, ECF Nos. 75 & 76, in
4 combination with the pre-existing record. Based on this review, the
5 Court finds that the documentation merely describes an administrative
6 process whereby the Plaintiff was deemed to qualify for certain
7 programs at WCC, while not qualifying for certain programs at MCC; the
8 documentation gives no appearance of a bad faith transfer.

9 Rather, the factual record before the Court suggests that
10 Plaintiff's transfer away from the Washington State Penitentiary (WSP)
11 in Walla Walla is appropriate. The Court has listened to Plaintiff
12 and thoroughly read the record; it is clear that Plaintiff desires a
13 transfer in order to be closer to an HIV specialist. It is equally
14 clear that Plaintiff does not wish to remain at WSP. At WCC,
15 Plaintiff will be closer to an HIV specialist, and he will no longer
16 be burdened by the myriad troubles allegedly tied to his incarceration
17 at WSP. The Court will not restrain Plaintiff's transfer, and his
18 request under ECF No. 49 is denied.

19 **II.  PLAINTIFF'S REQUEST FOR TEMPORARY RELIEF AND OTHER MOTIONS TIED TO THIS REQUEST**

20 Because the transfer will proceed as planned, another matter in
21 abeyance, Plaintiff's Motion for Prospective Temporary Injunctive
22 Relief, ECF No. 7, is likewise denied. The motion makes two general
23 requests: 1) a transfer for better HIV treatment and 2) more
24 responsive treatment of Plaintiff's other medical problems. To obtain
25 preliminary relief, Plaintiff must establish 1) he is likely to
26

ORDER - 4

succeed on the merits, 2) he is likely to suffer irreparable harm in the absence of preliminary relief, 3) the balance of equities tips in his favor, and 4) preliminary relief is in the public interest. *See Winter*, 555 U.S. 7, 20. Under the Ninth Circuit's "sliding scale" approach, these elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The Plaintiff does not establish any of these elements in the record, and the Court sees no indication that the Plaintiff would be able to establish any of these elements in a motion hearing. But even if the elements were established by Plaintiff, the Court sees no need to hold a hearing on Plaintiff's motion for preliminary relief because the Court finds that Plaintiff's transfer to WCC renders moot the relief requested in this motion. However, there is some disagreement over the true nature of the relief requested.

**A.   A Transfer for Better HIV Treatment**

In Plaintiff's Motion for Temporary Restraining Order, ECF No. 49, he states that the relief requested has always been a transfer to MCC with "disease control doctor D. Lopez-DeCastilla and [the] mental health transitional programs [available at MCC]." ECF No. 49-1 at 1. In the May 6, 2014 hearing, Plaintiff also stated that MCC has been the object of his requested relief all along. However, his assertions as to the narrowness of his requested relief are not supported by the record. Plaintiff has always noted the Monroe Correctional Complex as an option. ECF No. 7. But Plaintiff has more generally sought a transfer to "Western Washington" – presumably any facility in western

ORDER **-** 5

Washington – in order to receive more frequent care from Dr. Lara Strick, Plaintiff's disease control specialist who is based in western Washington. ECF No. 3 at 31; ECF No. 7-1 at 3. Thus, Plaintiff seems to present a moving target with regard to the relief requested in his Motion for Prospective Temporary Injunctive Relief, ECF No. 7. After reviewing the record, the Court finds that it is reasonable to accept the more general request for a transfer to a western Washington facility as the focus of Plaintiff's motion.

Even though Plaintiff does not receive the exact relief he desires, the Court finds that a transfer to WCC achieves the more general and more important goal of moving Plaintiff away from WSP to a facility where he will receive more regular treatment from an HIV specialist. Dr. Strick makes monthly visits to WCC, while she only visits WSP once every three months. ECF No. 66 at 3; ECF No. 22. Furthermore, as discussed *supra*, the Court will not interfere with DOC's lawful use of its discretionary powers; Plaintiff does not have a right to be transferred to a facility of his choosing. *Olim*, 461 U.S. at 245. Thus, the prong of Plaintiff's Motion for Prospective Temporary Injunctive Relief, ECF No. 7, that requests a transfer for better HIV treatment is denied as moot because it is being fulfilled.

**B.    The Need for Better Medical Treatment in General**

Ancillary to Plaintiff's request for a transfer is Plaintiff's request for removal from immediate physical harm relating to his allegedly poor healthcare treatment. He generally asks the Court to order better, more responsive healthcare treatment. Because Plaintiff will be treated by different healthcare providers at WCC, it is not

ORDER - 6

clear whether the alleged threat of harm from poor healthcare treatment will persist. The alleged harm came under the care of WSP staff. With new staff, the specific harm complained of will no longer be an issue. However, Plaintiff also complains of a general institutional harm arising from DOC indifference and lack of responsiveness to Plaintiff's medical needs. While this general harm *may* be present at WCC, it is unclear whether this general harm will persist in a new facility with new administration and new programs. The Court has no basis for ordering more responsive treatment because there is no record of treatment at WCC. In the eyes of the Court, the record that does exist with regard to Plaintiff's treatment neither establishes specific harm resulting from poor healthcare treatment nor general harm resulting from DOC indifference. To the contrary, the Court finds that the record reflects regular and timely responses by DOC to the Plaintiff's medical needs. The Court cannot grant relief on phantom harm. To the extent that Plaintiff's Motion for Prospective Temporary Injunctive Relief, ECF No. 7, requests the Court to order more responsive medical treatment, the motion is denied as moot.

Beyond the general concerns, Plaintiff makes a very specific request with regard to his healthcare treatment; he requests a medical wedge for use while sleeping. This wedge props him up and allegedly minimizes damage to his esophagus resulting from acid and indigestion issues. According to the record, a wedge must be prescribed by prison medical staff and issued by the prison property department; it appears to be a process with numerous administrative hurdles. The WSP medical

staff determined that multiple blankets could serve as a replacement wedge. The record before the Court does not sufficiently establish imminent danger from having blankets in the place of a wedge. Thus, this element of requested relief enters the same haze of uncertainty as the general request for better healthcare treatment – where there is no clear danger, there is no clear relief from that danger.

However, because the record reflects that Plaintiff has been prescribed a medical wedge in the past, the Court is concerned that Plaintiff may indeed need access to this medical instrument. As a result, the Court orders DOC to submit documentation detailing: 1) the medications Plaintiff is receiving for his esophageal problems, 2) the frequency of the medication use, 3) whether Plaintiff will have access to a medical wedge at WCC, and 4) if the Plaintiff will not have access to a medical wedge at WCC, the reasoning behind the denial of access. This documentation must be submitted no later than Thursday, June 19, 2014.

Ultimately, Plaintiff's transfer either grants his requested relief or disarms any alleged threats of immediate harm from poor medical treatment. Furthermore, the Court has ordered DOC to explain the only alleged threat that is remotely established in the record – Plaintiff's lack of access to a medical wedge. This alleged threat will be evaluated by the Court *in camera* once DOC submits the ordered documentation, and the Court will determine whether an Order directing DOC to provide Plaintiff with a wedge is necessary. Accordingly, the Court denies the entirety of Plaintiff's Motion for Prospective Temporary Injunctive Relief, ECF No. 7, as moot.

1    Additionally, because the motion for preliminary relief is
2 denied and there will be no hearing on this motion, the Court need not
3 determine whether the hearing should be in-person.  Thus, Plaintiff's
4 Motion/Request for an In-Person Hearing, ECF No. 30, and Plaintiff's
5 Motion Supplementing Plaintiff's Motion/Notice of Request for an In-
6 Person Hearing, ECF No. 61, are denied as moot.
7    Finally, because of concerns over Plaintiff's access to legal
8 materials that sparked extensive motions practice earlier in this
9 case, the Court wants to ensure that Plaintiff will have access to his
10 legal materials within a reasonable time after his transfer.
11 Plaintiff also voiced his distress over loosing access to his
12 phonebook, which allegedly contains information pertinent to
13 Plaintiff's legal proceedings.  Thus, the Court orders DOC to provide
14 Plaintiff with his required legal materials and his phonebook within
15 thirty days of his transfer to WCC.
16    A separate Scheduling Order will be issued with regard to the
17 trial date and deadlines associated thereto.

19    For the above-given reasons, **IT IS HEREBY ORDERED**:
20    1. Plaintiff's request that the Court compel his transfer to MCC
21       arising from the Court's interpretation of Plaintiff's Motion
22       for Temporary Restraining Order, **ECF No. 49**, is **DENIED**.
23    2. Plaintiff's Motion for Prospective Temporary Injunctive
24       Relief, **ECF No. 7**, Plaintiff's Motion/Request for an In-Person
25       Hearing, **ECF No. 30**, and Plaintiff's Motion Supplementing

ORDER **-** 9

Plaintiff's Motion/Notice of Request for an In-Person Hearing, **ECF No. 61**, are **DENIED AS MOOT**.

3. By **Thursday, June 19, 2014**, DOC shall submit documentation detailing: 1) the medications Plaintiff is receiving for his esophageal problems, 2) the frequency of the medication use, 3) whether Plaintiff will have access to a medical wedge at WCC, and 4) if the Plaintiff will not have access to a medical wedge at WCC, the reasoning behind the denial of access.

4. DOC shall provide Plaintiff with his required legal materials and his phonebook within thirty days of his transfer to WCC.

**IT IS SO ORDERED**.  The Clerk's Office is directed to enter this Order and forward a copy to Plaintiff and counsel.

**DATED** this   26th    day of May 2014.


                    s/Edward F. Shea
                    EDWARD F. SHEA
          SENIOR UNITED STATES DISTRICT JUDGE