UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD HOLTZ,<br><br>                Plaintiff,<br><br>     v.<br><br>JOELLA PHILLIPS, Physician Assistant; PETER BECK, MSW, M-Div, Mental Health Program Manager; WASHINGTON DEPARTMENT OF CORRECTIONS, SECRETARY BERNARD WARNER, ACTING ASSISTANT SECRETARY KEVIN BOVENKAMP, DEPUTY DIRECTOR SCOTT R. FRAKES, (DOC) MANAGER/MEDICAL DIRECTOR ROY GONZALEZ, (DOC) HEALTH CARE MANAGER MARY JOE CURREY, COYOTE RIDGE CORRECTIONS CENTER, SUPERINTENDENT JEFFREY UTTEHT, HEALTH CARE MANAGER DARREN CHLIPALA, DR. B. RODRIGUEZ, PSYCHIATRIST DR. MICHAEL REZNICEK, WASHINGTON STATE PENITENTIARY, SUPERINTENDENT, STEVEN SINCLAR, MEDICAL DIRECTOR JAMES EDWARDS, DR. F. SMITH, MENTAL HEALTH PHYSICIAN MELANIE HOWARD, AMERICAN DISABILITIES SPECIALIST HOLLY DE/CAMBRE (DOC), in official and individual capacities, CHIEF MEDICAL OFFICER G. STEVEN HAMMOND, PH.D.,<br><br>                Defendants. | No.  4:CV-14-5018-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND CLOSING FILE** |

Ronald Holtz filed this lawsuit to seek relief for Defendants' alleged failure to provide Mr. Holtz with the necessary medication and counseling for his medical and mental-health conditions. Defendants ask the Court to enter judgment in their favor as to each of Mr. Holtz's

ORDER - 1

claims: Defendant's Motion for Summary Judgment, ECF No. 193. This motion largely duplicates a summary-judgment motion that Defendants filed last year. The Court struck the prior summary-judgment motion in order to permit Mr. Holtz the opportunity to engage in additional discovery before responding to summary-judgment arguments. ECF No. 182. A new discovery deadline was established and the dispositive-motion-filing deadline continued. ECF No. 182. Thereafter, Mr. Holtz was released from state custody in April 2015. This fall, Defendants filed the instant summary-judgment motion.

Although Mr. Holtz was provided notice regarding the consequences of failing to file a response and facts contesting Defendants' summary-judgment motion, ECF No. 195, Mr. Holtz has not filed any documents in response. Because there are no documents filed in response to Defendants' summary-judgment motion, the Court proceeds to analyze Defendants' motion based merely on the record provided by Defendants and the relevant legal authority. For the reasons that follow, the Court determines Mr. Holtz's claims do not survive summary judgment.

**A.   Background**[1]

While in the custody of the Washington Department of Corrections, Mr. Holtz suffered a variety of medical and mental-health conditions.

---

[1] Because Mr. Holtz did not file any documents in response to the summary-judgment motion, this background is based on the facts contained in Defendants' summary-judgment materials. *See* Fed. R. Civ. P. 56(e); LR 56.1(b). More detailed facts are contained in Defendants' Statement of Facts, ECF No. 194, and the supporting declarations and exhibits.

ORDER **-** 2

In October 2012, Mr. Holtz was diagnosed with narcissistic personality disorder. A month later, Mr. Holtz was diagnosed with HIV. He met with Dr. Lara Strick, an HIV specialist. Dr. Strick counseled Mr. Holtz regarding what HIV is, how it is spread, and treatment options. Mr. Holtz was placed on antiretroviral treatment.

In February 2013, Mr. Holtz was transferred to Coyote Ridge Correctional Center. Dr. Elizabeth Suiter, who worked on-site as an HIV specialist, was Mr. Holtz's HIV treatment provider. Mr. Holtz complained on numerous occasions of abdominal pain and other medical conditions, including anxiety. Mr. Holtz was seen by medical staff on at least three occasions in March 2013. In April 2013, prison medical providers, including Dr. Suiter, Defendant Dr. Steven Hammond, and Defendant Dr. Michael Reznicek, treated Mr. Holtz.

In May 2013, Dr. Suiter met with Mr. Holtz regarding his HIV medications and lab tests, which showed that the HIV viral loads were almost undetectable and his medications were successfully suppressing the disease. Dr. Suiter examined Mr. Holtz's complaints of chronic pain and use of pain medications. Dr. Suiter noted Mr. Holtz's use of continued pain medication was concerning because his presentation, examination, and observed behavior did not support the degree of pain reported. Also in May 2013, Mr. Holtz refused to take medications or to be examined by medical staff. About a week later, mental-health staff met with Mr. Holtz in regard to his refusal to take his HIV medications. And on May 28, 2013, Mr. Holtz met with Dr. Reznicek because he was not taking his Clonidine as prescribed.

In June 2013, Dr. Strick met with Mr. Holtz. Dr. Strick encouraged Mr. Holtz to take his HIV medications. Thereafter, Mr. Holtz was transferred to Washington State Penitentiary, and within three days of his arrival, he met with Defendant Dr. James Edwards, the facility Medical Director, to discuss his non-HIV medical complaints. Mr. Holtz admitted he stopped taking his HIV medications for six weeks but that he was ready to start taking them again. Mr. Holtz also complained of abdominal pain, heartburn, and constipation. Following this consultation, Mr. Holtz had a telephonic meeting with Dr. Strick to restart his HIV medications. Dr. Strick prescribed certain HIV medications until Mr. Holtz's lab results returned. Once the lab results returned, Dr. Strick updated Mr. Holtz's HIV prescription. The last week of June, Mr. Holtz was also seen by mental-health staff on three occasions.

In July 2013, Defendant Dr. F. Smith evaluated Mr. Holtz in regard to his chronic abdominal pain. Dr. Smith prescribed Mr. Holtz two medications to address his constipation. Three days later, Dr. Strick prescribed a new medication. About two weeks later, Mr. Holtz was seen by Dr. Edwards and requested a bed wedge. Dr. Edwards did not believe a bed wedge was medically necessary but brought it to the Care Review Committee for discussion as Mr. Holtz was housed in the Intensive Management Unit where bed wedges were not permitted.

In August 2013, Mr. Holtz complained of nausea, abdominal cramps, and pain. He was seen by Dr. Smith on two occasions in August. He was issued two blankets to use in place of a bed wedge to assist with his comfort while sleeping. Dr. Strick was emailed regarding Mr. Holtz's

ORDER - 4

complaints with his HIV medications, and in response, Dr. Strick advised medical staff that she wanted to be notified if Mr. Holtz developed a rash as that would indicate hypersensitivity to the HIV medications.

On August 26, 2013, Mr. Holtz again refused to take his HIV medication. The next day, Dr. Strick had a teleconference with Mr. Holtz to discuss his HIV medications and his complaints about side effects. Dr. Strick determined that Mr. Holtz's complaints were not entirely consistent with the side effects of his HIV medications. However, Dr. Strick changed his HIV medication and ordered follow-up tests to see how the new medication would treat his HIV.

Over the course of the next two weeks, Mr. Holtz vacillated between seeking treatment for purported medication side effects to not wanting to discuss his medical conditions. On September 12, 2013, Dr. Strick met with Mr. Holtz and determined that his renal functioning had stabilized since the change in HIV medications. Dr. Strick ordered follow-up testing to reassure Mr. Holtz. And on September 18, 2013, the facility Care Review Committee approved Dr. Strick's request for an ultrasound of Mr. Holtz's abdomen in response to his complaints of chronic abdominal pain with right-sided tenderness. The ultrasound indicated Mr. Holtz's spleen, kidneys, and liver appeared normal. Mr. Holtz was seen by medical staff on at least three occasions in the latter half of September.

In October 2013, the Care Review Committee considered Mr. Holtz's request for a third blanket to address his Gastroesophageal Reflux Disease (GERD) with Los Angeles Classification Grade A Esophagitis, which is a mild form of esophagitis. The Care Review Committee

determined, based on the information before it, that a third extra blanket was not medically necessary. Mr. Holtz met with Dr. Strick via videoconference on October 10, 2013, and was advised he was doing well on his regimen of HIV medications. On November 7, 19, and 22, 2013, Mr. Holtz refused to be provided any mental-health services. Mr. Holtz thereafter again refused to take his HIV medications, and Dr. Strick was notified. On December 4, 2013, Dr. Strick spoke with Mr. Holtz on the telephone, and it was arranged that Dr. Strick would communicate with Mr. Holtz every two weeks. Following this telephone conference, Mr. Holtz agreed to take his medications. Dr. Strick met with Mr. Holtz on December 20, 2013, and then by phone on January 3, 2014.

Mr. Holtz was seen on three occasions in January 2014 for unrelated medical issues, and in addition on January 14, 2014, Mr. Holtz met with Dr. Grubb in regard to his anxiety. Dr. Grubb agreed to a sixty-day trial prescription of Clonidine to address Mr. Holtz's anxiety. On both January 17 and 24, 2014, mental-health staff reported that Mr. Holtz did not exhibit any mental-health abnormalities. On January 21, 2014, Dr. Strick met with Mr. Holtz, wherein he reported that he was feeling better and having fewer symptoms associated with his HIV medications.

On February 6, 2014, mental-health staff met with Mr. Holtz, and Mr. Holtz did not exhibit any signs of mental distress. On February 16, 2014, Mr. Holtz met with Dr. Grubb, who continued Mr. Holtz's prescription for Clonidine and increased the Celexa prescription. Dr. Strick met with Mr. Holtz on February 25, 2014, and then again on March 11, 2014. After the last meeting, Dr. Strick made changes to the HIV medication based on the recent lab tests. Dr. Strick also considered

whether Mr. Holtz's request for a bed wedge was medically necessary; Dr. Strick determined a bed wedge was not medically necessary as Mr. Holtz's esophageal condition could be treated with prescriptions and monitored. Also, in March 2014, Mr. Holtz met with Dr. Grubb on two occasions; Citalopram was the continued course of treatment.

In April 2014, Mr. Holtz was seen by medical staff on six occasions, including by Dr. Grubb and Dr. Strick; during which he did not have any complaints related to his diagnosed conditions.

On May 8, 2014, prison staff found Mr. Holtz sitting on his cell floor complaining that he had passed out. Mr. Holtz was examined and no injuries were observed that would be associated with falling from a loss of consciousness; however, he was admitted for overnight observation to the facility medical clinic. Five days later, Mr. Holtz had a teleconference with Dr. Strick; Dr. Strick continued the same regimen for HIV treatment based on the lab results.

On May 27, 2014, Mr. Holtz was found lying on his cell floor, unresponsive to voice commands. Mr. Holtz denied any pain or injury and there was no evidence of any injury. Mr. Holtz spoke to a medical provider, and was told to immediately report any changes in his health condition. The next morning, Mr. Holtz was again examined; it was determined the prior day's event was the result of malingering and not a loss of consciousness.

Mr. Holtz was thereafter transferred to Washington Corrections Center. Dr. Strick met with Mr. Holtz on June 2, 2014. Mr. Holtz was seen on six other occasions by medical staff in June 2014 for issues unrelated to his diagnosed conditions. In addition, Mr. Holtz met with

mental-health staff in June 2014, and his Clonidine and Citalopram prescriptions were continued. Later that month, Mr. Holtz was transferred to Stafford Creek Corrections Center (SCCC). Mr. Holtz met with the SCCC facility medical director and medical staff, and Mr. Holtz was examined for his reports of regurgitating in his sleep. Mr. Holtz was given hemoccult cards to collect stool samples and test for blood.

In early August 2014, Mr. Holtz refused to take his Celexa and Clonidine prescriptions, and the next day reported having an allergic reaction to one of his antiviral medications. However, he did not have any noticeable symptoms of an allergic reaction. Mr. Holtz was seen on two other occasions in August 2014 by medical staff, where on one occasion he provided samples on three hemoccult cards. Two came back negative for the presence of blood and one had a positive reading. Mr. Holtz advised that he had a colonoscopy in 2010; however, medical staff were unable to obtain such records from the reported medical facility as that facility responded "patient not found." Ultimately, the medical staff decided to submit a gastro-intestinal consultation for a colonoscopy and esophagogastroduodenoscopy (EGD). On August 25, 2014, Dr. Strick met with Mr. Holtz and discussed that the current HIV regimen was successfully treating his HIV.

Also in August, Mr. Holtz refused to take multiple doses of Clonidine. Therefore, Dr. Furst discontinued the prescription. However, in September 2014, Dr. Furst requested a Personality Assessment Inventory Interpretive Report for Correctional Setting to determine what mental-health medication would best treat the identified mental-health

issues. Mr. Holtz refused to take the test. Mr. Holtz was continued on Citalopram to address his mental-health conditions.

On September 11, 2014, Mr. Holtz was examined for complaints of an unwitnessed loss of consciousness; he did not have any visible signs of injury and his vital signs were normal. Mr. Holtz was transported to a public hospital for further evaluation where a tomography scan was taken and revealed no fractures or other evidence of injury. Low blood pressure could not be ruled out as a cause for a possible syncopal episode. Mr. Holtz was issued a soft collar to wear at night for the following week.

Dr. Strick met with Mr. Holtz on October 6, 2014, and Mr. Holtz was continued on the same medication.

On April 5, 2015, Mr. Holtz was released from DOC custody.

**B.    Authority and Analysis**

Mr. Holtz alleges Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, the Americans with Disabilities Act, Rehabilitation Act, and a variety of state constitutional and law claims.

**1.    Eighth Amendment**

Under 42 U.S.C. § 1983, an inmate must show "deliberate indifference to serious medical needs" to maintain an Eighth Amendment claim based on prison medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for deliberate indifference consists of two parts. *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006). First, the plaintiff must show a "serious medical need by demonstrating that failure to treat a prisoner's condition could result in further

significant injury or the unnecessary and wanton infliction of pain." *Id*. at 1096 (internal citations and quotations omitted). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id*. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the purposeful indifference. *Id*. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. at 1059 (quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* (citing *Estelle*, 429 U.S. at 105). And a difference of opinion between the prisoner-patient and prison medical authorities regarding treatment does not constitute deliberate indifference. *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id*. at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id*. (citations omitted).

Defendants do not contest that Mr. Holtz suffered from HIV and that HIV is a serious medical condition. Defendants maintain though that

ORDER **-** 10

the evidence establishes that they were not deliberately indifferent to the need to treat Mr. Holtz's HIV. The Court agrees.

In November 2012, when Mr. Holtz was diagnosed with HIV, he met with Dr. Strick, who is an infectious disease physician, to discuss his diagnosis and was counseled consistent with the state administrative standards for HIV care. Mr. Holtz was placed on antiretroviral treatment, which is the standard of care for someone with HIV. Mr. Holtz was seen by a medical provider on a regular basis and his medications updated if clinically necessary. Although Mr. Holtz was not placed at a facility with an onsite HIV specialist, the uncontested evidence establishes that his serious medical condition was addressed: Dr. Strick and Dr. Suiter consulted and treated with Mr. Holtz as medically needed.

In addition to his HIV treatment, Mr. Holtz was treated for GERD. He received medications and, at a minimum, an additional blanket to help him prop himself up while he slept. Mr. Holtz was seen on an appropriate basis for his complaints of pain and other medical conditions and received necessary treatment. The record does not support a finding that Defendants were deliberately indifferent to Mr. Holtz's GERD or other medical conditions.

In regard to Mr. Holtz's diagnosed narcissistic personality disorder and other mental-health symptoms, Mr. Holtz refused to consent to consistent mental-health treatment in 2012. The next year, Mr. Holtz requested to meet with mental-health providers and was provided treatment to address these issues. While housed at Washington State Penitentiary, Mr. Holtz met with mental-health staff on more than fifteen occasions. His mental-health treatment continued at each of the

1  facilities he was housed. The record reflects that at times Mr. Holtz
2  refused medication and refused to submit to mental-health treatment.
3  The record does not support a finding that Defendants were deliberately
4  indifferent to Mr. Holtz's mental-health conditions.

5      Furthermore, the Court determines that Mr. Holtz failed to present
6  facts to support a genuine dispute of material fact as to whether
7  Defendants Bernard Warner, Kevin Bovenkamp, Scott Frakes, Roy Gonzales,
8  Holly Delcambre, Jeffery Uttect, Steven Sinclair, Darren Chlipala, and
9  Marry Jo Currey caused or personally participated in a deprivation of
10 Mr. Holtz's constitutional right. *See Johnson v. Duffy*, 588 F.2d 740,
11 743-44 (9th Cir. 1978). There is no evidence presented that these
12 Defendants, who held supervisory roles, implicitly authorized,
13 approved, or knowingly acquiesced in unconstitutional conduct
14 pertaining to Mr. Holtz's medical or mental-health treatment.

15     Lastly, the Court finds Defendants are entitled to qualified
16 immunity in regard to Mr. Holtz's § 1983 claim.  It was clearly
17 established at the time of the alleged incidents that officers could
18 not intentionally deny or delay access to medical care. *Estelle*, 429
19 U.S. at 104-05. However, as discussed above, Mr. Holtz failed to present
20 evidence to establish a genuine dispute of material fact regarding
21 whether Defendants violated Mr. Holtz's clearly established right.

22     For these reasons, summary judgment is granted in Defendants'
23 favor on Mr. Holtz's § 1983 claim.
24 ///
25 //
26 /

ORDER - 12

**2.   Americans with Disabilities Act and Rehabilitation Act**

Mr. Holtz alleges that Defendants violated both the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) by failing to provide him with adequate medical treatment because of his disability.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the RA, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. For purposes of establishing liability under these statutes, the plaintiff must show more than evidence of *inadequate* treatment for disability, as this is not discrimination because of a disability. *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (The ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")).

At summary judgment, under both of these statutes, Mr. Holtz must provide evidence to support a finding that a genuine dispute of fact exists as to whether he suffers a disability and that he was denied a benefit because of his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997); *Johnson by*

*Johnson v. Thompson*, 971 F.2d 1487, 1493 (9th Cir. 1992). Assuming for purposes of this motion that Mr. Holtz's HIV and other medical and mental-health conditions are a disability, the Court finds Mr. Holtz failed to establish a genuine dispute of fact as to whether he was denied a benefit because of his purported disability. Accordingly, the Court grants Defendants summary judgment on Mr. Holtz's ADA and RA claims.

    **3.    Medical Negligence**

Mr. Holtz also alleges that Defendants' failure to treat and counsel him constitutes medical negligence. Mr. Holtz however failed to provide evidence to establish a genuine dispute of fact as to his medical negligence claim.

In order to support his medical negligence claim, Mr. Holtz needed to present evidence that Defendants "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances; [and that such failure was a proximate cause of the injury complained of." RCW 7.20.040. This burden includes a need to present expert testimony that the injury was proximately caused by a failure to comply with the applicable standard of care, or to show that non-expert testimony was sufficient to establish a breach of the standard of care. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 227-28 (1989). Mr. Holtz failed to satisfy these summary-judgment burdens. Accordingly, Defendants are granted summary judgment as to the claim for medical negligence.

**4.  Intentional Infliction of Emotional Distress**

Mr. Holtz failed to present evidence to establish a genuine dispute of material fact as to his claim for intentional infliction of emotional distress. There is no evidence presented that Defendants engaged in extreme and outrageous conduct that was intended to, or recklessly inflicted, emotional distress to Mr. Holtz, and that Mr. Holtz suffered severe emotional distress as a result of Defendants' conduct. *See Robel v. Roundup Corp.*, 148 Wn.2d 35, 51 (2002). Defendants responded to Mr. Holtz's requests to be seen by medical and mental-health staff. Although Mr. Holtz disagreed with the course of treatment prescribed by the medical providers, Defendants' decisions were based on diagnosed conditions and the pertinent standard of care. Accordingly, the Court grants Defendants' summary judgment on the claim of intentional infliction of emotional distress.

**5.  Other State-Based Claims**

Mr. Holtz also alleges that he is entitled to relief for violations of the Washington state constitution. ECF No. 3-1 at 28-30. However, Mr. Holtz may not recover money damages for an alleged violation of a constitutionally guaranteed state right. *See Spurrell v. Bloch*, 40 Wn. App. 854, 861-62 (1985); *see also Reid v. Pierce Cnty.*, 136 Wn.2d 195 (1998) (declining to establish a private action for damages under the Washington state constitution's right to privacy clause).

Finally, Mr. Holtz alleges that Defendants were negligent by failing to counsel with him. The statutes and rules cited do not provide a private cause of action for a violation. RCW § 70.24; WAC § 246-100.

///

ORDER **-** 15

**C.    Conclusion**

For the above reasons, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 193**, is **GRANTED**.
2. The Clerk's Office is to enter judgment in Defendants' favor.
3. All pending dates and deadlines are **STRICKEN**.
4. This file shall be **CLOSED**.

**IT IS SO ORDERED**. The Clerk's Office is directed to enter this Order and forward a copy to Mr. Holtz and counsel.

**DATED** this  30th  day of November 2015.


               s/Edward F. Shea
                EDWARD F. SHEA
       Senior United States District Judge

Q:\EFS\Civil\2014\5018.msj.lc1.docx

ORDER **-** 16